The **GREELEY NATIONAL BANK,**
**Plaintiff-Appellee,**

v.

**Gregory F. SLOAN,**
**Defendant-Appellant.**

**No. 82CA0900.**

Colorado Court of Appeals,
Div. II.

Sept. 29, 1983.

Rehearing Denied Oct. 27, 1983.

Certiorari Denied March 5, 1984.

Karowsky, Witwer & Oldenburg, Stow L. Witwer, Jr., Greeley, for plaintiff-appellee.

David G. Kroll, Greeley, for defendant-appellant.

VAN CISE, Judge.

Defendant, Gregory F. Sloan, appeals the trial court judgment entered in favor of the plaintiff, Greeley National Bank (Bank), against Sloan for $1,667.83 plus costs. Sloan also appeals the adverse judgment on his counterclaims. We affirm.

On August 12, 1977, Sloan executed a promissory note and security agreement payable to the dealer for the purchase of a 1976 automobile. The note was for the $4,872.79 balance of the purchase price plus interest. On August 16, the dealer assigned the promissory note and security agreement to Bank.

Sloan made one payment and then defaulted on the note. He voluntarily relinquished the auto to Bank on November 24, 1977. Bank resold the car for $3,900. After deducting credits and adding the resale expenses, Bank claimed a deficiency of $959.46 which amount, together with interest and attorney fees, it sought to collect in this action.

## I.

Sloan's first contention is that Bank did not present sufficient evidence to support the trial court's finding that the required notice of the date of the resale was given to him as required by Colorado law. We disagree.

Section 5-5-103(1), C.R.S.1973 (1982 Cum.Supp.) provides that a buyer is not liable for a deficiency unless the goods are disposed of in accordance with the Uniform Commercial Code (UCC) provisions on disposition of collateral. Section 4-9-504(3), C.R.S.1973 (1982 Cum.Supp.) of the UCC requires "reasonable notification of the time after which any private sale or other intended disposition is to be made" to be sent by the secured party to the debtor.

The evidence was in conflict as to whether the required notice was given. Sloan himself was confused as to whether he received the letter containing the notice. A Bank vice-president, who supervised the department handling Sloan's note, testified that Bank's standard procedure was to mail notice of the date of the sale to a debtor, retaining a copy of the notice in its files, such procedure being in the ordinary course of business. The vice-president testified further that a copy of the notice sent to Sloan was retained in Bank's file.

The existence of a business custom is sufficient to warrant a presumption that notice was sent. *See National Motors, Inc. v. Newman*, 29 Colo.App. 380, 484 P.2d 125 (1971). It is then up to the court to decide if that presumption is overcome by other evidence. *National Motors, Inc. v. Newman, supra.* There is no error in the finding that notice was given.

## II.

Sloan next contends that Bank unreasonably failed to refund an excess charge and, contrary to the trial court's ruling, should be liable for a penalty for such failure. We disagree.

Bank filed its complaint alleging a deficiency of $1,146.69. Sloan should have been credited $280.23 for life and disability insurance rebates. Bank was due $90 for collection charges. With these two transactions properly accounted for, the deficiency should have been reduced by $190.23 to $959.46. Bank admitted this error, and judgment was entered on the $959.46 deficiency.

Under the Uniform Consumer Credit Code (UCCC), a debtor is not obligated to pay an excess charge and, if he does pay it, he is entitled to a refund. Section 5-5-202(3), C.R.S.1973. Section 5-5-202(4), C.R.S.1973, provides for the imposition of a penalty "[i]f a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand." And, even if the debtor receives a refund, a penalty may be recovered if the excess charge was made in deliberate violation of or reckless disregard of the UCCC.

Here, Sloan did not pay an excess charge; thus, he was not entitled to a refund. Nor was he prejudiced by the miscalculation, since final judgment was entered on the smaller, correct amount.

Under the facts of this case, the trial court properly held that the adjustments were made in a reasonable amount of time.

## III.

Next, Sloan asserts a violation of the federal Truth in Lending Act, 15 U.S.C. § 1601, et seq., because Bank failed to disclose its status as a "creditor" on the promissory note. We affirm the trial court finding that Bank was an assignee and not a creditor, and that there was no requirement that it be disclosed on the note.

Regulation Z, promulgated pursuant to the Truth in Lending Act, requires disclo-

sure of the identity of the one extending credit and of the one arranging for the extension of credit. 12 C.F.R. §§ 226.8(a) and 226.2(b). Sloan argues that the dealer arranged the credit and Bank actually extended the credit. Only the dealer was identified as a creditor on the note.

In *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981), FMCC was found to be a creditor where, prior to completion of the transaction between buyer and seller, the buyer's credit application was approved by FMCC. FMCC then purchased the contract. The court found that seller never had a financing risk because of the prearranged assignment with FMCC and, thus, FMCC was the actual extender of credit and its identity should have been disclosed.

The facts of the instant case are distinguishable from those in *Cenance*. Here, the extension of credit and the assignment were not simultaneous. The extension of credit was not contingent upon Bank's approval. Although the dealer did from time to time assign notes to Bank, it dealt with other financial institutions also.

### IV.

 Sloan argues also that the Truth in Lending Act was violated because the phrase "a security interest in the property described below [the automobile] together with any and all optional equipment, additions, accessions, substitutions, and proceeds thereto and therefrom" that appears on the note is an inaccurate disclosure because it is a claim for more collateral than is allowed by § 4-9-204(2), C.R.S.1973 (1982 Cum.Supp.). That section prohibits attachment of a security interest to after-acquired consumer goods unless the debtor acquires rights in them within ten days after the secured party gives value. Sloan contends that the word "substitutions" in the above phrase provided Bank a security interest in any car Sloan might buy in the future and, thus, violated § 4-9-204(2), C.R.S.1973 (1982 Cum.Supp.).

We agree with the trial court's interpretation that the word "substitutions" in the context here did not connote after-acquired property. Instead, the word and the phrase were meant to protect the security interest in the automobile even if repairs were done or parts replaced. To read "substitutions" here to include an entirely separate vehicle would not be a reasonable interpretation. *See generally* 1B *Secured Transactions under UCC* (MB) § 17 C. 01 et seq. (1983).

### V.

■■■ Sloan's final contention is that Bank failed to sustain its burden of establishing the amount of reasonable attorney's fees.

The trial court awarded attorney's fees of 15% of the deficiency as provided for in the note. Reasonableness of attorney's fees is a question of fact for the trial court, and its determination in that regard will not be disturbed on review unless it is patently erroneous and unsupported by the evidence. *Hartman v. Freedman*, 197 Colo. 275, 591 P.2d 1318 (1979). We find no error here.

Judgment affirmed.

SMITH and KELLY, JJ., concur.